UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x
STEPHANIE PLAINTIFF, :
:
:
Plaintiff, :
: No. 10 Civ. 8505 (CS) (LMS)
- against - :
:
SATURN BUSINESS SYSTEMS *et al.*, :
:
Defendants. :
---------------------------------------------------------------- x

# DEFENDANTS' LOCAL CIVIL
# RULE 56.1 STATEMENT OF MATERIAL FACTS

TANNENBAUM HELPERN
  SYRACUSE & HIRSCHTRITT LLP
900 Third Avenue
New York, New York 10022
(212) 508-6700
*Attorneys for Defendants*

June 14, 2012

Pursuant to Rule 56.1 of the Local Civil Rules of the United States District Court for the Southern District of New York, Defendants Saturn Business Systems, George Pappas, Alan Krieger and Lou Siegel (collectively, "Defendants"), by their attorneys Tannenbaum Helpern Syracuse & Hirschtritt LLP, maintains that the following material facts are not subject to dispute:[1]

1. Defendant Saturn Business Systems ("Saturn") is a company that sells computer hardware and software. (Krieger Aff. ¶ 1.) A significant part of Saturn's business is acting as a business partner of IBM by selling IBM hardware and software. (*Id.* Ex. A 48:24-49:25.)

2. Defendant Alan Krieger ("Krieger") is the President and an owner of Saturn. (*Id.* ¶ 1.)

3. Defendant George Pappas ("Pappas") was a sales manager during Plaintiff's employment with Saturn and was Plaintiff's direct supervisor while she worked at Saturn. (*Id.* ¶¶ 2, 6; Ex. H 5:17-6:2; 6:25-7:9.)

4. Defendant Lou Siegel ("Siegel") has been employed by Saturn for approximately twelve years as a sales representative. (*Id.* Ex. L 5:11-21.)

5. Prior to working for Saturn, Plaintiff worked for IBM where she sold IBM products. (*Id.* Ex. A 8:24-9:10; 10:13-11:5.) One of Plaintiff's customers while she worked at IBM was Lockheed Martin. (*Id.* ¶ 2; Ex. A 34:21-35:18.)

6. Saturn hired Plaintiff in part based on the relationships she developed as a former employee of IBM, including her representation to Pappas that she could sell IBM products to Lockheed Martin based on these relationships. (*Id.* ¶ 2; Ex. A 19:6-20:9; 21:12-18; 35:19-36:9.)

---

[1] This Statement of Material Facts refers to the Affidavit of Alan Krieger, sworn to on June 11, 2012 and submitted in support of Defendants' Motion for Summary Judgment ("Krieger Aff.").

7. Pappas interviewed Plaintiff and offered her a job, Krieger gave final approval for the hiring of Plaintiff, and she began working for Saturn on or around May 2, 2005. (*Id.* ¶ 2; Ex. A 38:9-12.)

8. Plaintiff's sales declined during her employment at Saturn. (*Id.* ¶ 5; Ex. C.)

9. In response to Lockheed's complaints about the service it was receiving from Plaintiff, Pappas attempted to speak to Plaintiff on the phone, but Plaintiff hung up on him. (*Id.* Ex. D at SBS01533-01534.) Pappas emailed Plaintiff in response, copying Krieger, Saturn's President, and instructing Plaintiff to "[c]onsider this email your one and only warning for insubordination. I will be talking to Lockheed on a day to day basis. Hearing one more complaint from them will not be good." (*Id.* at SBS01534.) Plaintiff responded by emailing Krieger, copying Pappas, and stating that she "would appreciate that George stick to the facts and not be argumentative." (*Id.* at SBS00612.) She then forwarded to Krieger and Pappas an email she sent to a coworker "apologiz[ing] for the fact that you had to hear the unfortunate exchange between our Manager. He seems to want to pick arguments instead of addressing issues." (*Id.*) Krieger replied to Plaintiff that "I have noticed numerous unproductive emails going back a[nd] forth between you and George []. This needs to stop. . . . I believe that LM is losing confidence in your communication with them. . . . George is my Sales Manager, you need to work with him . . . . [I]f you want to remain at Saturn you need to get [Lockheed] back on track and work with George." (*Id.* at SBS01549.) Plaintiff then responded: "I would appreciate that George find other methods of venting." (*Id.*)

10. On May 14, 2009 an IBM employee emailed Pappas about Plaintiff, stating that "*my day was filled with comments of amazement from the people getting these emails that this person still has a job. It is going to be very difficult establishing credibility and finding anyone*

2

*willing to engage themselves or their contacts with this rep.*" (*Id.* ¶ 7; Ex. E at SBS01521-01522 (emphasis supplied).)

11.     A few days later, the same IBM employee emailed Plaintiff questions regarding support she was providing. (*Id.* at SBS01543-01546.) Plaintiff responded: "Please do not tell me how to do my job," and the IBM employee forwarded this email to Pappas. (*Id.* at SBS01543-01544.)

12.     From October 2009 to her termination in December 2009, Plaintiff repeatedly complained about the fact that when using Saturn's webinar technology her login information identified her to other webinar participants as "Liz Pagan," another employee at Saturn. (*Id.* Ex. F.) All Saturn employees were subject to the same policy (*id.* at SBS01560; SBS01562; Ex. A 92:15-19), and Pappas explained this situation to Plaintiff, including the undue expense that would be incurred in providing individual accounts for each Saturn employee. (*Id.* ¶ 8; Ex. F at SBS01562.) No one else at Saturn complained about this policy. (*Id.* Ex. A 92:15-21; Ex. C 22:9-23:3; 99:7-18.)

13.     On December 3, 2009 Plaintiff raised the webinar issue with Pappas via email for at least the fourth time, copying other Saturn employees. (*Id.* Ex. F at SBS01560-01562.) In her email she wrote: "Gee, would you want to make a[n] [] investment with a company . . . that you can't figure out who your sales person is? Wow . . . [t]hat makes such a first great impression doesn't it?" (*Id.*) Pappas responded by repeating his previous explanation, stating that he did not want to hear about the issue again, and asked Plaintiff to focus on her job. (*Id.* at SBS01560-01561.) Plaintiff responded to Pappas the next day, copying Krieger and additional Saturn employees, and stating that the situation "is embarrassing . . . I can manage myself and I don't

3

need Management if the two times I ask for your assistance, you do not take the action necessary in a reasonable timeframe. Have a great day!" (*Id.* at SBS01560.)

14. Plaintiff alleges that George Pappas bullied her though his behavior generally, but she admits that Plaintiff believes that this alleged behavior by Pappas was part of his "aggressive, New York personality that could be bullying" (*id.* Ex. A 102:11-14), and that he interacted in similar ways with other Saturn employees, including Lou Siegel (*id.* Ex. A 102:9-105:18; Ex. L 20:9-14.)

15. Plaintiff alleges that Siegel became angry when she made a particular sale and as a result he punched a wall, but she did not see him punch anything and she admits that the alleged punching noise could have been made by anyone. (*Id.* Ex. A 126:6-22.)

16. Saturn did not reimburse Plaintiff for a meal with a friend during a business trip, but the meal was not business-related and Saturn does not reimburse employees for such meals. (*Id.* ¶ 13; Ex. I at SBS00514-00515.)

17. Plaintiff requested that she be sent to a Tivoli software training event in Las Vegas, but Dan Fitzgerald was sent instead. (*Id.* ¶ 14.) Fitzgerald was hired specifically to sell Tivoli software and software generally. (*Id.*; Ex. A 152:12-15; Ex. H 39:2-11; 43:19-44:2; Ex. J at SBS00576-00579.)

18. Plaintiff made a sale to Lockheed Martin in November 2009, but Lockheed did not pay the invoice for that sale until January 15, 2010. (*Id.* Ex. K at SBS02058.) Saturn's President, Alan Krieger, left the country for vacation that same day, and was not available to approve commission payments while he was away. (*Id.* ¶ 15; Ex. K SBS02049.) Plaintiff received the commission payment for this sale in February 2010 after Krieger returned from

vacation. (*Id.* Ex. A 129:25-130:5.) Plaintiff admits that Saturn normally was very good about timely paying the commissions owed to her. (*Id.* 128:8-129:4.)

19. Plaintiff sometimes worked from home one day per week. (*Id.* 111:10-12.)

20. Plaintiff was terminated on December 4, 2009 by Pappas with the approval of Krieger. (*Id.* ¶ 18.)

Dated: New York, New York
June 14, 2012

                            TANNENBAUM HELPERN SYRACUSE
                            & HIRSCHTRITT LLP

By:   /S/ Andrew W. Singer
       Andrew W. Singer
       Matthew J. Sinkman
       *Attorneys for the Defendants*
       900 Third Avenue
       New York, New York
       (212) 508-6700
       Singer@thsh.com

To: Stephanie Christoff (via FedEx)