UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
STEPHANIE CHRISTOFF,                          :
                                              : No. 10 Civ. 8505 (CS) (LMS)
               Plaintiff,               :
                                              : **AFFIDAVIT OF**
     - against -                            : **ALAN KRIEGER**
                                              :
SATURN BUSINESS SYSTEMS *et al.*,             :
                                              :
               Defendants.              :
------------------------------------------------------------------x

STATE OF NEW YORK    )
                              ) ss.:
COUNTY OF NEW YORK  )

ALAN KRIEGER, being duly sworn, deposes and says:

1. I am the President and an owner of Defendant Saturn Business Systems ("Saturn"), a company founded in 1982 that sells computer software and hardware. A large part of Saturn's business is acting as a business partner of IBM, selling IBM products and services. In Saturn's entire history, no one other than Plaintiff has alleged that Saturn engages in any form of discrimination, and until now Saturn has never been sued for discrimination. Saturn prides itself on its diverse workforce, reputation, and core business. In fact, three of Saturn's seven executives are female. To be clear, Saturn has never discriminated against anyone, including Plaintiff.

2. Defendant George Pappas is a sales manager at Saturn, and he interviewed Plaintiff in March or April 2005 for possible employment with Saturn. During the interview Pappas offered Plaintiff a position as a sales representative / account manager and she accepted. I gave final

[961499-4]

approval for the hiring of Plaintiff, and she began working for Saturn on or around May 2, 2005. One of the main reasons Plaintiff was hired was to take advantage of the relationships she developed as a former employee of IBM, including her relationship with Lockheed Martin ("Lockheed"). (Christoff Dep. November 30, 2011 (Exhibit A) at 19:6-20:9; 35:19-36:9.)

3. Saturn hires sales representatives to make sales, open new accounts with new customers and maintain great customer service with their accounts at all times. Our sales representatives' continued employment depends on how well they perform these tasks. Saturn has employed approximately four female sales representatives other than Plaintiff. One of these female sales representatives is Saturn's highest earning sales representative ever, and she still works with Saturn.

4. Saturn hired Plaintiff at an annual salary of $55,000 plus a 25% commission on gross profits from sales that she made. (Ex. A 53:9-54:4.) All similarly-situated sales representatives at Saturn received this identical compensation package, or less (as with some male employees). (An unexecuted version of Saturn's offer letter to Saturn, and offer letters to similarly-situated sales representatives are attached hereto as Exhibit B (Saturn has been unable to locate an executed copy of Plaintiff's agreement but there is no dispute as to its execution and authenticity by the parties).)

5. By 2008, Plaintiff's sales decreased and were below the level of sales that Saturn expected from its sale representatives. Plaintiff's sales continued to decline in 2009, which Plaintiff herself acknowledged. (*See* Exhibit C.) Plaintiff also made serious errors with her customers and Saturn repeatedly received complaints about her performance.

6. In April 2009 Saturn nearly lost Lockheed as a customer due to Plaintiff's conduct in handling that account. Pappas, who was Plaintiff's supervisor, had received complaints from

Lockheed about Plaintiff. When Pappas attempted to speak with Plaintiff about the complaints, Plaintiff hung up the phone on Pappas. Pappas then emailed Plaintiff, copying me, and instructing Plaintiff to "[c]onsider this email your one and only warning for insubordination. I will be talking to Lockheed on a day to day basis. Hearing one more complaint from them will not be good." Plaintiff then replied to both of us, inappropriately copying another Saturn employee, and stating that she "would appreciate George stick to the facts and not be argumentative." She then forwarded to Pappas and me an email she had sent to a coworker "apologiz[ing] for the fact that you had to hear the unfortunate exchange between our Manager. He seems to want to pick arguments instead of addressing issues." I replied to Plaintiff that "I have noticed numerous unproductive emails going back and forth between you and George []. This needs to stop. . . . I believe [Lockheed] is losing confidence in your communication with them. . . . George is my Sales Manager, you need to work with him . . . . [I]f you want to remain at Saturn you need to get [Lockheed] back on track and work with George." (*See* Exhibit D.) Two months later, Lockheed was still complaining about the service it was receiving from Plaintiff. (*Id.* at SBS0352.)

       7.      Plaintiff also made mistakes handling IBM, our most important business partner. As a result, on May 14, 2009, an IBM employee emailed Pappas about Plaintiff, stating that "*my day was filled with comments of amazement from the people getting these emails that this person still has a job. It is going to be very difficult establishing credibility and finding anyone willing to engage themselves or their contacts with this rep.*" (*Id.* Ex. E at SBS01521-01522 (emphasis supplied).) A few days later, the same IBM employee emailed Plaintiff questions regarding support she was providing. Plaintiff responded: "Please do not tell me how to do my job," and the IBM employee forwarded this email to Pappas. (*Id.* at SBS01543-01546.)

3

8. Saturn obtained one license from a webinar company so that it could provide presentations to clients and potential clients remotely. From October 2009 to her termination in December 2009, Plaintiff repeatedly complained about the fact that when using the webinar her login information identified her to other webinar participants as "Liz Pagan," another employee at Saturn. Plaintiff wanted to be identified correctly as "Stephanie Christoff." While in isolation this seems like a reasonable request, Plaintiff ignored the fact that Saturn would have to pay more money for each employee that wanted to be separately identified. I made a business decision that such an expense was not necessary. No other Saturn employee complained about this decision, and Pappas repeatedly explained to her that providing individual login identifications for each Saturn employee was too expensive.

9. When Plaintiff raised this issue with Pappas on December 3, 2009 (for at least the fourth time), she forwarded him a previous message to other Saturn employees in which she wrote: "Gee, would you want to make a[n] [] investment with a company . . . that you can't figure out who your sales person is? Wow . . . [t]hat makes such a first great impression doesn't it?" Pappas responded by repeating his previous explanation, stating that he did not want to hear about the issue again, and asked Plaintiff to focus on her job. Plaintiff responded to Pappas the next day (copying me and additional Saturn employees), stating that the situation "is embarrassing . . . I can manage myself and I don't need Management if the two times I ask for your assistance, you do not take the action necessary in a reasonable timeframe. Have a great day!" (*See* Exhibit F.) This insubordination coupled with Plaintiff's poor performance and inability to accept criticism from her superiors led to the decision to terminate Plaintiff. Plaintiff's allegations that she was terminated for

discriminatory reasons and treated differently due to her gender have no basis in fact. (The Complaint and Answer are attached as Exhibit G.)

10. Plaintiff's allegation that she was lied to about her unemployment rights is unsupportable, as no one at Saturn spoke to her about her unemployment rights. (Ex. A at 73:24-74:6.) Likewise, no one interfered with Plaintiff's access to an attorney, as Plaintiff admitted during her deposition. (*Id.* Ex. A at 77:14-24.)

11. I understand that Plaintiff alleges Saturn acquired a customer named "Highmark" from confidential information she kept in a folder on her desk when Pappas and Defendant Lou Siegel, another sales representative at Saturn, surreptitiously reviewed the folder. This allegation is totally untrue as Saturn acquired Highmark through a referral from IBM. (Pappas Dep. Dec. 19, 2011 (Exhibit H) at 100:10-20.)

12. I further understand that Plaintiff contends she was bullied by Pappas while she worked at Saturn. Pappas denies this allegation (Ex. H at 74:12-15), and as Plaintiff testified at her deposition, she thinks that his alleged behavior was part of his "aggressive, New York personality that could be bullying" (Ex. A at 102:11-14). While I cannot say that Pappas never lost his temper at work, Saturn takes such allegations very seriously, and I have never seen nor had any Saturn employee complain that Pappas bullies anybody.

13. Plaintiff contends that Saturn wrongly denied her request for reimbursement of about sixty dollars for a dinner she had with a friend during a business trip in Maryland. Saturn does not reimburse employees for meals with friends that are not business-related. Pappas initially tried to appease Plaintiff by initially approving this request for reimbursement. However, I reversed his decision as against company policy and denied Plaintiff's request. (Ex. H at 81:8-82:4; *see also*

Exhibit I.) All Saturn employees are treated equally with respect to reimbursement of their legitimate business expenses, in accord with company policy, and Plaintiff has been paid for all of her reimbursable expenses due to her.

14. Plaintiff alleges that Saturn discriminated against her by not sending her to a training event in Las Vegas regarding "Tivoli" software, and instead sending an employee named Dan Fitzgerald. The notion that this decision was discriminatory is utterly wrong, as Fitzgerald was hired specifically to sell Tivoli and software generally, whereas Plaintiff was hired primarily to sell hardware. (Ex. A at 152:12-15; Ex. H at 39:2-6; 43:19-44:2; *see also* Fitzgerald's resume attached hereto as Exhibit J.) Saturn selectively sends its employees to training events based on need, cost, and fit of particular employees to different training topics. There was no need for Saturn to send Plaintiff to this training and I did not want to add an expense during an economic downturn.

15. Plaintiff asserts that Saturn deliberately delayed a commission payment to her for a sale she made to Lockheed in November 2009. As Plaintiff acknowledged at her deposition, she received the commission payment in February 2010, and the evidence shows that Lockheed did not pay the invoice until January 15, 2010. Commissions are not paid until Saturn receives payment from the customer. Further, I left the country for vacation that same day, and was not available to approve commission payments for any Saturn sales representative while I was away. Plaintiff was promptly paid upon my return from vacation. (Ex. A at 129:25-130:5; *see also* Exhibit K.) Indeed, Plaintiff conceded at her deposition that Saturn was normally timely in paying commissions owed to her. (Ex. A at 128:-129:4.) Plaintiff has been paid all of the commissions and salary due to her.

16. Plaintiff maintains that Lou Siegel was angry as a result of her having made a particular sale, and that in response he punched a wall in the *bathroom* at Saturn's office. In

addition to Siegel's denial that he was angry Plaintiff made this sale (Siegel Dep. Dec. 19, 2011 (Exhibit L) at 14:12-18), this allegation is also contradicted by Plaintiff's deposition testimony that Siegel allegedly punched a wall in the *hall* (Ex. A at 124:7-10). Indeed Plaintiff admitted at her deposition that she did not actually see Siegel punch anything and that a noise she allegedly heard could have been made by anyone. (*Id.* at 126:6-22.)

17. Plaintiff's allegation that she was discriminated against because she was not allowed to work from home every day also has no merit. First, Saturn never promised Plaintiff she could work from home every day. Saturn does occasionally allow its employees to work from home, but it does so at its discretion, depending on individual employees' abilities and circumstances, including how far they live from Saturn's offices. As Plaintiff testified at her deposition, she lived about eight miles from Saturn's office, and despite this fact she was still often permitted to work from home one day per week. (Ex. A at 111:10-12; 111:25-112:4.) Moreover, as discussed above there were serious issues with Plaintiff's performance that justified requiring her to work in the office.

18. Pappas and I decided to terminate Plaintiff on December 4, 2009 because she failed to acquire and sustain new business / new accounts during the duration of her employment; she was insubordinate on multiple occasions; she could not accept criticism from her superiors; she refused to accept Saturn's policy regarding access to its webinar technology; and customers complained about her performance. As an at-will employee any of the above reasons would have been enough to terminate Plaintiff yet we gave Plaintiff numerous chances to perform adequately and she failed to do so.

 

_____
Alan Krieger

Subscribed to and sworn
before me this 11 day of
June 2012

_____
Notary Public

JOHN M. FLYNN
Notary Public, State of New York
Qualified in Queens County
No. 01FL6236762
My Commission Expires March 5, 2016